No. 682

First Circuit

---

ANDERSON v. HOPE VENEER COMPANY, INC.

---

(June 7, 1927.   Opinion and Decree.)
(June 28, 1927.   Rehearing Refused.)

---

(*Syllabus by the Editor*)

1. **Louisiana Digest—Obligations—Par. 76.**
Where an agreement was made that a salary of twenty-five dollars a week was to be paid in cash and an additional fifteen dollars per week was to be paid after the debts of the business had been paid, if the business lost money the additional fifteen dollars per week cannot be recovered.

2. **Louisiana Digest—Evidence—Par. 58, 59.**
In a suit to recover a salary, the liability for which is denied by the defendant, under Article 2232 of the Civil Code, the burden of proof is on the defendant to show that he does not owe it.

Appeal from the District Court, Parish of Tangipahoa.   Columbus Reid, Judge.

Action by F. O. Anderson against Hope Veneer Company, Inc.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

A. Sidney Burns, of Ponchatoula, attorney for plaintiff, appellant.

A. W. Spiller, of Hammond, attorney for defendant, appellee.

ELLIOTT, J.   Suit by former manager, superintendent and stockholder of a corporation, to recover a sum alleged to be due as back salary.

The plaintiff claims of defendant back salary amounting to $1922.42.   He alleges that in a statement issued to him as of date, December 31st, 1924, defendant admitted owing him $1532.26 at that time and the statement is annexed to and made part of his petition.   That since December 31st, 1924, and up until July 1st, 1925, the further sum of $390.00 became due him in the same way, making a total of $1922.42, which he claims with interest.

Defendant filed an answer, verified by Charles Lohmann, its president, denying the alleged indebtedness.

Charles Lohmann, then acting individually and as a stockholder of defendant,

sought to intervene in the suit and join defendant in resisting plaintiff's demand. The plaintiff objected to his intervention, on the ground that his petition disclosed no right which entitled him to intervene. Plaintiff's objection was sustained and the intervention disallowed. Intervenor appealed.

Plaintiff objected to defendant's answer on the ground that it contained inconsistent defenses and prayed that defendant be required to elect. This objection was overruled. The case then went to trial between the plaintiff and defendant and resulted in the rejection of plaintiff's demand. The plaintiff appealed.

Charles Lohmann alleges an interest and under the law, Code Practice, Articles 390 and 391, "it is enough to have an interest in the success of either of the parties in the suit," in order to have the right to intervene; but in this case, as the answer of the defendant, puts at issue every matter alleged by the plaintiff, which Lohmann sought to help defeat, and Mr. Lohmann himself appeared as defendant's representative and every phase of the case was covered, we concluded that it is not worth while to remand the case in order that his intervention may be reinstated.

As for plaintiff's exception that defendant's answer contains inconsistent defenses; we do not think them inconsistent. The motion to elect was properly overruled.

Hope Veneer Company, Inc., was organized with Charles Lohmann, Lee W. Holle, Charles L. Norman and F. O. Anderson as incorporators, on August 4th, 1921. The capital stock was fixed in the charter at $40,000.00, divided into 400 shares of $100.00 each, but according to the testimony adduced on the trial, only 200 shares were issued and paid for.

When the time came to receive and pay for the stock, Lee W. Holle did not take any. F. O. Anderson took only ten shares, but Charles Lohmann and Charles L. Norman each took and paid for 50 shares and also took in addition between them 50 shares which Holle had agreed to take and 40 of the 50 which Anderson was to take.

The corporation did not commence business until about October, 1922, at which time Lee W. Holle was not connected with it. Lohmann, Norman and Anderson owned all the stock and composed the board of directors, with Charles Lohmann as president, F. O. Anderson as vice-president, superintendent and general manager, and Charles L. Norman, so the plaintiff testified, was supposed to be the shipping clerk, treasurer and looked after the warehouses.

Soon after they commenced business the directors held a meeting and agreed that a salary of $50.00 a week should be charged against the corporation in favor of each of the three parties, but this amount was not to be paid in full; part of it was to be paid each week and the balance was to be left in the business to be used for the purpose of paying for the property equipment, machinery, etc. But after this had been done and money became available for the purpose, then the remainder of the salary was to be paid to the parties to whose credit it was carried on the books. The evidence shows that one of the reasons which induced the directors to charge up back salaries as a liability of the corporation was the effect it had on the Federal Income Tax due by corporations.

Pursuant to the agreement entered into with reference to salary, Anderson at first received $25.00 a week, but after a few months he received $35.00 per week and continued to receive this amount so long as he was connected with the business, and

the balance remaining, say $15.00 per week, was charged on the books as a liability against defendant in his favor. This charge running for nearly three years makes up the amount which plaintiff claims in this case. No partiality is claimed nor pretended to have been practiced, though amounts received were not always the same.

There is no real disagreement between plaintiff and the other two directors on this subject. Plaintiff, examined and cross-examined, repeated the agreement more than once, using different terms. The following is one of his statements in regard to it:

Q. After you finished for what?

A. The balance of the machinery, property and all equipment we had.

Q. Well, I would like to have you be specific about that if you can. According to your understanding, when were you to get this additional $15.00 per week?

A. There wasn't any specific time mentioned.

Q. I don't mean that; it had something to do with the condition of the business. Wasn't that the idea?

A. The idea was that, from my understanding, we were only to draw part of our salary and the other part was to go on paying the debts on the property and all the machinery which we bought. Then after that, we were supposed to get our back salary, which we had credit for.

Q. And was it specified what sort of debts would be paid before you got that $15.00 additional?

A. No, sir.

Q. It was not specified?

A. No, sir.

Q. Simply understood that it was to pay the debts and then you would get the $15.00?

A. Yes, sir.

Charles Lohmann and Charles L. Norman, testifying about the agreement, are more explicit; but their understanding was not different in any material manner from that of the plaintiff.

The evidence shows that plaintiff understood perfectly well that the $15.00 a week was only a conditional credit, subject to the exigencies and demands of the business in the matter of paying for the property, machinery and equipment; after which, if funds for the purpose became available, the back salary was to be paid.

Messrs. Lohmann and Norman testify that they discovered very soon after commencing business that the $50.00 a week salary could not be paid. That payment for the property, machinery and equipment made it necessary to leave this weekly amount in the business in order to meet demands on said account and use it for the purpose of paying same. That the net earning capacity of the defendant did not admit of paying more salary than was actually paid to the parties each week.

Plaintiff in his testimony (note testy. pp. 26 and 27), says that the property, machinery and equipment had been paid for at the time he sold his stock; but he does not maintain and nothing indicates that at that time, or before or since, that there has at any time been money available for the purpose of paying back salaries. He admits in his testimony that after selling his stock to Lohmann, he remained in defendants' employment a couple of months, erecting machinery and equipment which Mr. Lohmann says had been ordered before Mr. Anderson sold his stock, but which had not been paid for. Mr. Lohmann is supported in the matter by Mr. Norman. The evidence of Lohmann and Norman further shows that at the time plaintiff sold his stock and retired from the business, all of his back salary as well as that credited to themselves, had been used and consumed, pursuant to the agreement of the parties for the purpose of paying for the property, machinery and equipment. That other payments were due and for more than a month, previous to the sale of plaintiff's stock, in fact the occasion for

the sale, was that the business had been losing money, falling behind and had become involved in serious financial straits and they are clear that there was no funds belonging to defendant available for the purpose of paying back salaries. This testimony was given in the presence of the plaintiff and he took the stand in rebuttal, but was not asked to and did not deny these statements of Lohmann and Norman.

The evidence shows that at a meeting of the plaintiff and the other directors on July 1st, 1925, for the purpose of discussing defendant's financial condition, Mr. Lohmann proposed to sell out his interest for what he had put in the business; Mr. Norman stated that he was also willing to do that, and Mr. Anderson stated that he was also willing to do that, and the conference terminated in the agreement whereby Anderson sold his ten shares of stock to Lohmann for $1000.00 cash, their face value, and Lohmann gave his personal note to Norman covering the face value of his stock, upon which Norman and Anderson retired from the business, leaving it in the hands of Lohmann to be worked out as best he could.

Lohmann testifies that when he bought Anderson's and Norman's stock, that it was understood with each of them, that the sum received covered all their interest in the business. Norman admits that such was his understanding, but Anderson denies that such was the understanding on his part. His denial, however, is countered by the fact that when he delivered his stock certificate to Lohmann and received his check for $1000.00 in payment, he thought of and reminded Lohmann that the defendant owed him $25.00 for a pump and about $33.00 for some lumber, and requested payment. He admits that Lohmann paid him these sums in addition to the sum paid him for his stock and that he said nothing to

Lohman about back salary. If plaintiff had understood at that time that defendant owed him $1,922.46 on account of back salary, he would have almost certainly thought about it and said something about it. It is difficult to conclude that plaintiff would have remembered the amount due him for a pump and on account of some lumber and not thought about this back salary if he had considered that anything was due him by defendant on that account.

He accepted employment from defendant which had become vested in Mr. Lohmann and Mr. Lohmann's wife and nephew, and worked about two months at fifty cents an hour, and still said nothing about any claim on account of back salary. After about two months he quit and as soon as he decided to quit he called on Mr. Lohmann with reference to back salary. He testifies that when he called on Mr. Lohmann in regard to the matter that Mr. Lohmann did not deny that defendant owed him the amount, but claimed that there was no money with which to pay it, that the money had been used to pay for property, machinery, etc. (note testy. pp. 23). Lohmann says that he informed plaintiff that there was nothing due him on that account and explained why.

Under the law Civil Code Article 2232, the burden of proof was upon defendant to prove the facts, showing that liability to plaintiff on account of this salary does not exist. We find that defendant has shown that the liability claimed by plaintiff does not exist.

The judgment appealed from is correct. Judgment affirmed.

Plaintiff and appellant to pay the cost in both courts.